**This order is SIGNED.**

**Dated: March 3, 2022**



**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

In re:

JOHN T. WOODHOUSE, *nka* SARA
JADE WOODHOUSE,

Debtor.

Bankruptcy Number: 15-22570

Chapter 7

KIMBERLY CERUTI,

Plaintiff,

v.

JOHN T. WOODHOUSE, *nka* SARA
JADE WOODHOUSE,

Defendant.

Adversary Proceeding No. 15-2125

Hon. R. Kimball Mosier

## MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO AMEND

Plaintiff Kimberly Ceruti entered into an agreement with Defendant Sara Woodhouse to purchase Woodhouse's condominium in 2007. When Woodhouse sold the condominium to another buyer, however, that sparked years of litigation between the parties concerning, among other things, who had the right to receive certain proceeds from that sale. Woodhouse eventually filed

1

bankruptcy, and Ceruti filed this adversary proceeding challenging Woodhouse's entitlement to a discharge in 2015—another gnarled branch of the litigation rooted in that 2007 transaction. Ceruti's complaint principally contends that Woodhouse should be denied a discharge because she omitted or mischaracterized items on her bankruptcy filings, including the sale proceeds.

As the Court will explain in detail in Section II, *infra*, this adversary proceeding has a long procedural history. Shortly before the hearing at which this Court was to consider summary judgment under Rule 56(f)(3), Ceruti filed a Motion for Leave to File Amended Complaint (Motion to Amend). The parties fully briefed the motion, and the Court conducted a hearing at which it heard oral argument and issued its ruling denying the Motion to Amend from the bench. The Court reserved the right to enter a written decision memorializing that oral ruling without altering its substance or the Court's final judgment. In accordance with that reservation, and after considering the Motion to Amend, along with memoranda and exhibits attached thereto; after considering the parties' oral arguments; and after conducting an independent review of applicable law, the Court issues the following Memorandum Decision denying the Motion to Amend.[1]

## I. JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(1). The complaint invokes 11 U.S.C. § 523 and § 727, making this a core proceeding within the definition of 28 U.S.C. § 157(b)(2)(I) & (J), and the Court may enter a final order. Venue is appropriate under 28 U.S.C. § 1409.

---

[1] This Memorandum Decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a), made applicable in adversary proceedings by Fed. R. Bankr. P. 7052. Any of the findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law are similarly deemed, to the extent appropriate, to be findings of fact, and they shall be equally binding as both.

## II. PROCEDURAL BACKGROUND

The procedural path this adversary proceeding has taken since its inception in 2015 is nothing less than circuitous, marked by numerous delays, a detour to the District Court, and a return to plow old ground. Explaining this history is necessary to understand the procedural posture at this juncture, but lest the telling of a tortuous tale become torturous, the Court will endeavor to condense the events into a concise summary.

Ceruti, represented by the firm of Wood Balmforth LLC at the time, commenced this adversary proceeding against Woodhouse on June 29, 2015. The complaint alleged claims under 11 U.S.C. § 727(a)(2), (a)(4)(A) & (B), and (a)(7)[2] based on allegations that Woodhouse omitted certain information from, and incorrectly represented other information on, her bankruptcy schedules and papers, including amendments thereto. The complaint also made a passing reference in its opening sentence to an unspecified claim under § 523 without naming the particular subsection and paragraph of § 523 relied on or the conduct giving rise to such a claim.

Woodhouse answered, and the Court entered a scheduling order on August 31, 2015, which established, among other things, September 18, 2015 at the deadline for Ceruti to amend her pleadings.[3] That deadline has never been extended.[4] The parties filed what the Court treated as cross-motions for summary judgment,[5] which the Court denied on August 23, 2016.

---

[2] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.

[3] Dkt. No. 7, ¶ 5. All subsequent references to docket numbers are to those in this adversary proceeding unless otherwise indicated.

[4] Ceruti did file a motion to extend the dispositive motion deadline on the day it expired—December 18, 2015. *See* Dkt. No. 10. The Court granted that motion, and while the order granting it stated that "all other deadlines in this matter are adjusted in light of" the new dispositive motion deadline, the order did not establish a new deadline for Ceruti to amend pleadings. Dkt. No. 12, at 2. Moreover, the order required the parties "to file an amended scheduling order setting forth the [adjusted] dates" by January 4, 2016 and provided that if they failed to do so, the Court would conduct a scheduling conference. *Id.* The parties did not file an amended scheduling order, and neither party appeared at the final pretrial conference on March 1, 2016. Crucially, while the Court subsequently entered amended scheduling orders, the deadline for Ceruti to amend pleadings remained unchanged. *See* Dkt. No. 35, ¶ 5 (retaining the September 18, 2015 deadline);

3

That October, Ceruti's counsel withdrew from representation, and she has proceeded *pro se* since. The Court set a scheduling conference for November 22, 2016, which the Court continued on Ceruti's motion. During the following year, Ceruti filed a succession of motions to continue various hearings and proceedings, citing medical treatment and difficulty in securing replacement counsel. The Court generally accommodated those motions but denied her motion to continue the final pretrial conference set for October 17, 2017 because the motion failed to comply with the provisions enumerated in a prior order for seeking any further continuances.[6] The Court then scheduled trial for December 12, 2017.

Four days before trial, Ceruti filed a Motion to Withdraw the Reference, alleging that withdrawal was appropriate based on the alleged bias of the Court against her. On September 26, 2018, the United States District Court for the District of Utah entered its order denying her Motion to Withdraw the Reference, concluding that the motion was untimely as a procedural matter and, addressing the merits, had failed to state cause to withdraw the reference.

Woodhouse obtained new counsel that October who wished to reopen discovery. Ceruti did not object to additional discovery, so at a continued pretrial conference on January 31, 2019, the Court reset certain litigation deadlines, including setting September 15, 2019 as the discovery cut-off date and November 15, 2019 as the dispositive motion deadline.

On November 12, Woodhouse filed a motion to dismiss this adversary proceeding under Rule 12(b)(6). The following month Ceruti also filed what was captioned as a motion to dismiss. Although that motion confused what was actionable under § 523 and § 727, it appeared to suggest that Ceruti did not intend to pursue her claims to deny Woodhouse's discharge any longer but

---

Dkt. No. 97, ¶ 4 ("Neither party anticipates joining additional parties or amending the pleadings."). Ceruti did not object to either amended scheduling order.
[5] Dkt. Nos. 17 & 22.
[6] *See* Dkt. No. 63 (citing Dkt. No. 56).

would only attempt to except her claims from Woodhouse's discharge.[7] The motion did not request to amend the complaint. Woodhouse filed a response to that motion, in which she objected "to any attempt to reserve any claims under Section 523 because Plaintiff has not pleaded any causes of action under that section."[8] The Court denied that motion at a hearing on January 14, 2020 because while Ceruti repeated her intention to except only her claims from Woodhouse's discharge, the conduct she identified was only actionable under § 727. The Court also denied Woodhouse's motion to dismiss and set the matter for trial on March 24, 2020.

Shortly thereafter, Woodhouse moved to continue the trial date due to a conflict. The Court entered a Final Pretrial Order on June 26, 2020, which rescheduled trial for August 20, 2020. That order also stated that "[t]here are no requests to amend pleadings," and neither party objected to that statement. Two weeks before trial, Ceruti filed a motion to reschedule trial due to the procedural limitations imposed by the COVID-19 pandemic.

Prior to the filing of that motion, however, the Court had signed an order continuing the trial without date.[9] That order stated the Court's belief that this matter may be capable of resolution on summary judgment without having to go to trial. The Court conducted a status conference on August 20, 2020, at which it invoked its ability to consider summary judgment on its own under Rule 56(f)(3). The Court also informed Ceruti that she would be able to show the Court on summary judgment the evidence she would present at trial that she believed supported her claims, and the Court would determine if that is sufficient to carry her burden. Through a succession of orders, the Court gave notice to the parties of the material facts it believed may not be genuinely in

---

[7] An accompanying proposed order, prepared by Ceruti, would have dismissed her § 727(a)(4) and (a)(7) claims with prejudice and withdrawn the first prayer for relief in the complaint, which was that the "Court deny [the] discharge of Debtor Woodhouse." Dkt. No. 126, at 1-2.

[8] Dkt. No. 129, at 6.

[9] Dkt. No. 142. The order was signed on August 5 and entered on the docket the following day.

5

dispute, provided opportunity for the parties to file briefs on whether summary judgment should be granted in Woodhouse's favor on all of Ceruti's claims based on those facts and any other facts the parties considered material, and set a hearing to consider summary judgment under Rule 56(f)(3) for January 12, 2021.[10] Both parties submitted initial and reply briefs in advance of that hearing.[11]

Ceruti failed to appear at the Rule 56(f)(3) hearing and could not be reached when the Court attempted to contact her, so the Court rescheduled the hearing to February 2, 2021.[12] Four days before that hearing Ceruti filed two motions, one the Motion to Amend and the other seeking a continuance of the Rule 56(f)(3) hearing. She set neither motion for hearing. The Court continued the Rule 56(f)(3) hearing to March 30, 2021, set the Motion to Amend for hearing on the same date, and established a briefing schedule on that motion.[13]

### III. DISCUSSION

As noted previously, Ceruti's original complaint alleged claims under § 727(a)(2), (a)(4)(A) & (B), and (a)(7) while obliquely referring to § 523. The proposed amended complaint, which is attached to the Motion to Amend, retains the § 727(a)(2) and (a)(4) claims, eliminates the § 727(a)(7) claim, and includes an extensive factual recitation that Ceruti believes supports a newly asserted § 523(a)(2)(A) claim.[14] At the outset, the Court notes that the most recent pretrial order,

---

[10] Dkt. Nos. 145, 152, & 158.

[11] Woodhouse captioned her initial brief as Motion and Memorandum of Sara Woodhouse for Summary Judgment. Dkt. No. 154, at 1. Ceruti has argued that this made Woodhouse the movant and placed on her the requirements that Rule 56 demands of movants. The Court disagrees. Regardless of how Woodhouse captioned it, this document was her opening brief called for by the Court's Order Setting Briefing Schedule in Advance of Rule 56(f)(3) Hearing, Dkt. No. 152. The Court will treat it as such rather than a motion for summary judgment.

[12] Dkt. No. 161.

[13] Dkt. No. 166, at 3-4.

[14] Ceruti has characterized the proposed amendment as an attempt to settle this matter with Woodhouse by seeking to except her claim from Woodhouse's discharge rather than deny that discharge in toto. *See* Dkt. No. 172, ¶ 5 ("Ceruti, appearing pro se, has moved the Bankruptcy Court with a proposed Amended

entered by the Court on June 26, 2020, states that the "first sentence of the [original] complaint . . . asserts a general claim against the Defendant under 11 U.S.C. § 523, though the complaint does not later specify which particular subsection and paragraph of § 523 the Plaintiff relies on."[15] The Court mentions the pretrial order to clarify that it did not amend Ceruti's complaint. As a general rule, "'[w]hen an issue is set forth in the pretrial order, it is not necessary to amend previously filed pleadings' because 'the pretrial order is the controlling document for trial.' . . . [T]he inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim."[16]

But the pretrial order did not amend Ceruti's original complaint because that complaint already contained a reference to a § 523 claim. The pretrial order simply described how the complaint treated that § 523 claim, nothing more. To be sure, by noting the existence of an asserted § 523 claim, the pretrial order acknowledged that a trial in this proceeding would encompass that claim.[17] Since neither the complaint nor the pretrial order described the contours of such a claim, however, its inclusion in the order was more of a formality than an indication that the parties would necessarily try that claim. In fact, the pretrial order stated that Ceruti "retains the

---

Complaint removing the request [that] Defendant be denied discharge of any debt, save that of Ceruti. Ceruti presented this compromise whereby the Defendant would be able to seek a discharge from the majority of Defendant's debt, save those relating to Ceruti."). This statement contains echoes of the motion to dismiss Ceruti filed at the end of 2019 and suffers from similar problems. In both instances, Ceruti expressed an intent to limit the relief sought to excepting only her claims from Woodhouse's discharge. But at the same time, she has maintained that Woodhouse improperly omitted and mischaracterized information in her bankruptcy filings. The two positions stand in irreconcilable conflict: Those allegations cannot form the basis for a claim under § 523(a), and as long as Ceruti pursues them she is necessarily seeking denial of Woodhouse's discharge. Indeed, Ceruti's retention of those allegations and the § 727(a)(2) and (a)(4) claims in the proposed amended complaint belies the assertion that she merely intends to except her debt from discharge.

[15] Dkt. No. 135, ¶ 3(a).

[16] *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (quoting *Expertise, Inc. v. Aetna Fin. Co.*, 810 F.2d 968, 973 (10th Cir. 1987) *and citing* Fed. R. Civ. P. 16(e)).

[17] *See* Dkt. No. 135, ¶ 3(a) ("[W]hile the Plaintiff has on multiple occasions suggested that she does not wish to pursue certain of those claims [mentioned in the complaint], no resolution was reached on that front. Therefore, the Court will proceed under the assumption that the trial will encompass all of [those] claims.").

right to abandon pursuit of any of the claims at trial."[18] Importantly, the pretrial order did not add facts that were not in the complaint, nor did it specify on what subsection and paragraph of § 523 Ceruti intended to rely, both of which Ceruti's proposed amended complaint intends to do. Because the pretrial order did not amend Ceruti's complaint, she must amend it through the Motion to Amend.

Rule 15(a) governs amendments to complaints before trial, but it is not the only rule in play. Scheduling orders typically set a deadline for parties to amend pleadings, and where a party's request to amend occurs after the scheduling order deadline to make such amendments, Tenth Circuit precedent requires that that party satisfy the standard to modify a scheduling order found in Rule 16(b)(4) in addition to the requirements to amend pleadings found in Rule 15(a).[19] Here, the original scheduling order set September 18, 2015 as the deadline for Ceruti to amend pleadings, which has remained unchanged since it was established. Because Ceruti's request to amend her complaint comes after the deadline to do so, she must satisfy Rule 16(b)(4) and Rule 15(a).

Ceruti advances two arguments why *Tesone* does not apply. First, she appears to assert that the requirement that she satisfy Rule 16(b)(4) in addition to Rule 15(a) is not the "intended meaning" of *Tesone*, but she offers no explanation of what *Tesone* could mean aside from that. The rule stated in *Tesone* is clear and well-established—the Tenth Circuit had previously cited it with approval in at least two earlier cases.[20]

Second, Ceruti argues that *Tesone* should be distinguished because the present adversary proceeding allegedly "hinges or begins with a criminal act, formed with intent to use the

---

[18] *Id.* ¶ 3(a).

[19] *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 989-90 (10th Cir. 2019) (citing *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015)).

[20] *See Birch*, 812 F.3d at 1247; *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)).

Bankruptcy Court system as a mechanism to illegally obtain money . . . by deception and deceit under the guise of a bankruptcy filing."[21] Ceruti then asserts that Woodhouse's acts were criminal and violated 18 U.S.C. § 9. That section defines what "vessel of the United States" means for purposes of title 18 and does not appear relevant to this proceeding.[22] The Court assumes that Ceruti meant to cite to 18 U.S.C. §§ 151-158, the portion of the United States Code dealing with bankruptcy crimes, which is confirmed by her invocation of 18 U.S.C. § 157 at oral argument.

Ceruti's belief that Woodhouse may have committed bankruptcy crimes offers no basis to distinguish *Tesone*, however. Bankruptcy crimes "are subject to prosecution before the District Court, not the Bankruptcy Court. The Bankruptcy Court's authority extends to civil matters only."[23] Whatever crimes Ceruti believes Woodhouse may have committed are simply not at issue in this proceeding. Ceruti's claims are all civil claims arising under the Bankruptcy Code. Prosecution of those claims is governed by the Federal Rules of Bankruptcy Procedure, which in turn incorporate relevant portions of the Federal Rules of Civil Procedure. Rules 15 and 16 are two of the Federal Rules of Civil Procedure that pertain here, the Tenth Circuit has issued binding decisions on how courts must interpret and apply those rules, and *Tesone* is one such binding decision. The existence of any alleged criminal acts does not alter the application of the Federal Rules of Civil Procedure to this admittedly civil proceeding. The Court sees no basis to distinguish *Tesone* and will apply its rule here.

Pursuant to the framework laid out in *Tesone*, the Court will address Rule 16(b)(4) first. If a party seeking leave to amend fails to satisfy Rule 16(b)(4), that ends the inquiry; there is no need to

---

[21] Dkt. No. 171, at 2.

[22] The entirety of 18 U.S.C. § 9 reads: "The term 'vessel of the United States,' as used in this title, means a vessel belonging in whole or in part to the United States, or any citizen thereof, or any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof."

[23] *Wood v. United States (In re Wood)*, 341 B.R. 804, 812 (Bankr. S.D. Fla. 2006).

address Rule 15(a), and a motion to amend may be denied.[24] Rule 16(b)(4) states that a scheduling order "may be modified only for good cause and with the judge's consent." "'In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts.' . . . 'Good cause' also 'obligates the moving party to provide an adequate explanation for any delay.'"[25] A court has considerable discretion in determining what constitutes good cause and examines various factors to reach a conclusion on that issue. The most prominent factor is the "relative diligence" of the moving party; "[g]ood cause is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party."[26] Possible prejudice to the party opposing the modification of the schedule is relevant, though not determinative by itself.[27] Examples of good cause include learning new information through discovery or a change in the underlying law.[28] But "[i]f the plaintiff knew of the underlying conduct but simply failed" to assert claims based on that conduct, that does not constitute good cause and those claims will be barred.[29]

Ceruti's Motion to Amend consists of 238 pages, but, for all that volume, the motion itself is two sentences long. The balance is the proposed amended complaint and exhibits thereto. Ceruti does not cite Rule 16(b)(4) in those two sentences, much less argue good cause to modify the Court's scheduling order. Her reply addresses the issue and appears to argue that the diligence

---

[24] *Tesone*, 942 F.3d at 990 (citations omitted).

[25] *Id.* at 988 (quoting *Gorsuch*, 771 F.3d at 1241 *and Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018)).

[26] *Id.* (quoting 3 James Wm. Moore, Moore's Federal Practice-Civil § 16.14[1][b] (3d ed. 2019)).

[27] *Id.* (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)).

[28] *Id.* at 990 (quoting *Birch*, 812 F.3d at 1247).

[29] *Gorsuch*, 771 F.3d at 1240 (citing *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) *and Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987)).

standard of Rule 16(b)(4) should apply in a more lenient fashion to *pro se* parties like herself.[30] But this is not the law. Nowhere in *Tesone* does the Tenth Circuit describe a different diligence standard applicable to *pro se* litigants. In fact, the Tenth Circuit recently applied the *Tesone* rule, without modification, to a *pro se* plaintiff's motion to amend her complaint.[31] This application of Rule 16(b)(4) is merely one facet of the general rule, repeatedly emphasized by the Tenth Circuit, that *pro se* parties must "follow the same rules of procedure that govern other litigants."[32] Accordingly, Ceruti's *pro se* status does not affect the Court's determination of good cause.

Regarding the question of good cause, Ceruti appears to argue that she had been diligent, but her prior counsel's withdrawal in this proceeding in October 2016, as well as in other pending litigation, combined with a restriction on her access to legal research at the library of the University of Utah S.J. Quinney College of Law occasioned by the pandemic, essentially made it impossible to comply with the applicable deadlines.

But the facts of this case do not support such an argument. The deadline to amend pleadings was September 18, 2015, which occurred when Ceruti was still represented by counsel. That deadline was more than a year before her counsel withdrew and over four years before the onset of the pandemic. Ceruti was represented when the complaint was filed, through the initial discovery phase, and through the parties' cross-motions for summary judgment—a total of approximately fifteen months. At no time while Ceruti was represented did her counsel seek to amend the complaint. Her reliance on withdrawal of counsel and the pandemic to explain the delay

---

[30] *See* Dkt. No. 173, at 4 ("A standard of diligence applied to cases in which plaintiff is represented by counsel and here where they are pro se . . . should not be viewed in the same manner as one where counsel is present throughout.").

[31] *Clancy v. Miller*, 837 F. App'x 630, 633 (10th Cir. 2020) (unpublished).

[32] *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)); *see also Rajala v. Taylor (In re Taylor)*, 495 B.R. 28, 33 n.18 (10th Cir. BAP 2013) ("[A party's] *pro se* status does not excuse her obligation to comply with fundamental procedural requirements." (citing *Nielsen*, 17 F.3d at 1277)).

in filing the Motion to Amend is insufficient. Simply put, events that occurred after the September 18, 2015 deadline do not explain why she failed to meet that deadline.

Ceruti also appears to argue that good cause exists because Woodhouse's counsel stymied her discovery requests in 2019 and she only became aware of relevant facts through her "own tireless investigation, independent of the discovery process" and "exhaustive research work."[33] In general, discovery of new information can constitute good cause. But there is no new information relevant to Ceruti's complaint here. The proposed amended complaint intends to add a claim under § 523(a)(2)(A), asserting that Woodhouse used false pretenses to induce Ceruti to purchase her condominium and made false representations leading up to the execution of the Real Estate Purchase Contract (REPC) by the parties.[34] In support of that claim the complaint alleges in copious detail facts regarding the history of the condominium, as well as that of the entire complex, and Ceruti's negotiations to purchase Woodhouse's condominium. Broadly speaking, the proposed amended complaint alleges that that condominium had a known history of repeated flooding, which history Woodhouse deliberately hid from Ceruti during the sale negotiations. It also alleges that Ceruti purchased a second unit in the same complex that shared an adjoining wall with Woodhouse's and suffered from the same flooding problems and that the seller of that unit, CFR Investments, L.L.C., similarly failed to disclose that defect.[35] It then contends that Woodhouse sought to make the transaction seller-financed and to push the closing date back for pretextual reasons.[36] It further alleges that Woodhouse used the extra time gained from pushing back the closing to plan and execute a breach of the sale contract, after which she and CFR collaborated and

---

[33] Dkt. No. 171, at 2-3.

[34] Dkt. No. 163, Ex. 1, ¶ 67.

[35] *Id.* ¶¶ 44-45, 47-52. The proposed amended complaint specifically alleges that "[e]ach condo unit had a flooding problem in which the condo units flooded into each other . . . ." *Id.* ¶ 45.

[36] *Id.* ¶¶ 68-74.

engaged in a pattern of harassing litigation against Ceruti to force her to "abandon all rights under the purchase contracts."[37]

But Ceruti has not clearly explained what facts she discovered without which she could not have timely filed a § 523(a)(2)(A) claim. As regards the flooding, she already knew the condominium she bought from CFR had that problem by October 2010, when she filed a motion for relief from stay in CFR's bankruptcy case that included allegations concerning CFR's non-disclosure of the flooding defect.[38] That motion also asserted the condominium she purchased from CFR flooded in May 2010.[39] It is difficult to imagine that the unit Ceruti intended to buy from Woodhouse did not experience flooding at that time as well since the two units shared a wall and Ceruti has alleged that they "flooded into each other." Moreover, the proposed amended complaint states: "If the Bankruptcy Court wonders why Ceruti is here, as well, as a result of Ceruti's efforts, the flooding which seems to have plagued those condominiums for decades and the genesis of much litigation, *was fully disclosed in the public realm, through these multiple lawsuits*."[40] In short, Ceruti not only asserts that she knew of the flooding problems affecting the two units, but also claims to have brought them to light through litigation. And this appears to have taken place years before Woodhouse filed bankruptcy. Importantly, Ceruti has not argued that she did not know of the flooding issues related to Woodhouse's condominium until after the deadline to amend pleadings. The Court concludes that the facts concerning the flooding are not newly discovered; Ceruti knew of them but simply failed to timely plead them in service of a § 523(a)(2)(A) claim.

---

[37] *Id*. ¶¶ 75-77, 53-58, 60-61.

[38] Dkt. No. 163, Ex. 23; *see also* Dkt. No. 38 in Case No. 10-21587, ¶¶ 3-7.

[39] Dkt. No. 38 in Case No. 10-21587, ¶ 12.

[40] Dkt. No. 163, Ex. 1, ¶ 64 (emphasis added). The "multiple lawsuits" Ceruti refers to may include the 2010 bankruptcy case filed by CFR, Dkt. No. 157, ¶ 45, and the following state court litigation: the 2008 suit Woodhouse filed against her (where Ceruti is a counterclaimant and third-party plaintiff), a second suit Woodhouse filed against her in 2010, two suits filed by CFR against her in 2008 and 2010, and a 2011 suit she filed against CFR and other defendants. *Id.* ¶¶ 39-42, 44, 46; Dkt. No. 163, Ex. 1, ¶ 62; Dkt. No. 163, Exs. 23, 26.

The other allegations in the proposed amended complaint pleaded under § 523(a)(2)(A) were also known to Ceruti before Woodhouse filed bankruptcy. She knew about Woodhouse's breach and the negotiations to make the sale seller-financed and to push back the closing date because she was a party to the transaction. These issues also appear to have been litigated in state court: The original complaint noted that the parties had been actively engaged in litigation regarding the condominium since 2008, which was nearing trial when Woodhouse filed bankruptcy.[41] Again, Ceruti has not argued that she did not know of these facts before the deadline to amend pleadings.

Every indication is that Ceruti had the information she now seeks to include in her proposed amended complaint before September 18, 2015. Not only was Ceruti a party to the 2007 transaction out of which her intended § 523(a)(2)(A) claim arises, but in the years following that transaction she was also involved in certain lawsuits concerning that transaction, including one where she counterclaimed against Woodhouse. These lawsuits were also commenced multiple years before Woodhouse filed bankruptcy. Ceruti has not pointed to the discovery of any facts without which she could not have amended her complaint to assert a § 523(a)(2)(A) claim before September 18, 2015.

For these reasons, the Court concludes that Ceruti has not shown good cause under Rule 16(b)(4) to modify the Court's scheduling order by extending the deadline to amend pleadings. The Court will deny the Motion to Amend on that basis. Under the rubric prescribed by *Tesone*, that ends the inquiry. For the sake of argument, however, the Court will also address whether the Motion to Amend meets the standard of Rule 15 for amending pleadings.

---

[41] Dkt. No. 1, ¶¶ 1-3, 5.

Because Ceruti's request to amend occurs before trial but outside of the time periods that permit amendment as a matter of course, Rule 15(a)(2) is the applicable provision. It states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."[42] Woodhouse has not consented to the request to amend; therefore, the Court's leave is required. "The grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."[43]

The purpose of Rule 15 "is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"[44] Even so, leave to amend, while typically freely given, may be denied if certain circumstances are present, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or the] futility of amendment."[45] In evaluating whether a party's delay is undue, courts in the Tenth Circuit "focus[] primarily on the reasons for the delay" and follow the rule "that denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'"[46] While it is true that "[l]ateness does not of itself justify the denial of the amendment," and "Rule 15(a) does not restrict a party's ability to amend its pleadings to a particular stage in the action[,] . . . [t]he longer the delay, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a

---

[42] Fed. R. Civ. P. 15(a)(2).

[43] *Minter*, 451 F.3d at 1204 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)).

[44] *Id.* (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

[45] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[46] *Minter*, 451 F.3d at 1206 (quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993)).

15

sufficient reason for the court to withhold permission to amend."[47] Denial of a motion to amend is proper

> when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, to present theories seriatim in an effort to avoid dismissal, or to knowingly delay raising an issue until the eve of trial.[48]

Denial is also appropriate where a "plaintiff was aware of all the information on which [her] proposed amended complaint was based prior to filing the original complaint."[49]

The Court concludes that Ceruti's delay in this case is undue. In the first place, she has not offered an adequate explanation for why she filed her Motion to Amend at this juncture. That alone constitutes sufficient grounds to deny the motion. The Court also notes that the delay in filing the motion is protracted, coming more than five and a half years after she commenced this proceeding. But far more important is the timing of that motion—Ceruti filed it on January 29, 2021, four days before the Court was scheduled to conduct a hearing to consider summary judgment in Woodhouse's favor on all of Ceruti's claims under Rule 56(f)(3). The Court was scheduled to conduct that hearing on February 2 only because the Court, not wanting to prejudice Ceruti, had continued the hearing to that date after she had failed to appear without justification or excuse at the previously scheduled Rule 56(f)(3) hearing on January 12. It appears that Ceruti used the extra time gained from that continuance to file the Motion to Amend in an attempt to delay, forestall, or prevent the Court from addressing summary judgment by adding detail and specificity to her § 523 claim, which had previously been a claim in name only. What's more, Ceruti has been on notice of the insufficiency of her § 523 claim since January 2020 at the latest, when Woodhouse argued in response to Ceruti's motion to dismiss that she "has not pleaded any causes of action under

---

[47] *Id.* at 1205 (citations and internal quotation marks omitted).
[48] *Id.* at 1206 (citations and internal quotation marks omitted).
[49] *Id.* at 1207 (quoting *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998)).

[section 523]."[50] The Court reinforced that impression when it stated at the January 14, 2020 hearing on Woodhouse's motion to dismiss that had Woodhouse included a request to dismiss Ceruti's § 523 claim in that motion, the Court could have granted it.

Ceruti knew of the pleading defects in her § 523 claim and knew of the facts she intends to plead in support of her amended § 523(a)(2)(A) claim prior to filing her original complaint yet did not object to the statement in the Court's pretrial order entered in June 2020 that "[t]here are no requests to amend pleadings." Moreover, she has not explained what has changed that necessitates amendment of that claim now and why it could not have been accomplished earlier. The only reasonable conclusion is that the Motion to Amend is an effort to make Ceruti's complaint a moving target, to stave off summary judgment at the eleventh hour by fleshing out a claim she had known about for years. This is the very type of conduct Rule 15 aims to avoid. Ceruti's failure to explain the timing of the Motion to Amend, combined with the fact that it was filed on the eve of the Rule 56(f)(3) hearing, leads the Court to conclude that she filed the motion with a dilatory motive and in bad faith, which constitutes an additional ground to deny the motion.

Moreover, amendment would be futile, which occurs "if the complaint, as amended, would be subject to dismissal."[51] Even if the Court modified the scheduling order to extend the date to amend pleadings to January 29, 2021 and the Court granted Ceruti leave to amend her complaint, her § 523(a)(2)(A) claim would be dismissed under the applicable statute of limitations. Rule 4007(c) requires that claims under § 523(a)(2), (a)(4), and (a)(6) be filed within sixty days of the date first set for the 341 meeting. That deadline in Woodhouse's bankruptcy case was June 29,

---

[50] Dkt. No. 129, at 6.
[51] *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quoting *Jefferson County Sch. Dist. v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999)).

17

2015. Ceruti's amended complaint would be untimely under Rule 4007(c) unless it related back to the original complaint, which was filed on June 29, 2015.

The relation-back of amendments is governed by Rule 15(c), which states, as applicable here, that "[a]n amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[52] "A new pleading cannot relate back if the effect of the new pleading 'is to fault the defendants for conduct different from that identified in the original complaint,' even if the new pleading 'shares some elements and some facts in common with the original claim.'"[53]

While Ceruti's original complaint includes some facts regarding the condominium transaction and the state court litigation related thereto, none of those facts concern Woodhouse's alleged concealment of its flooding problem and condition or her alleged plan to push back the closing date and breach the sale contract. Moreover, the facts in the original complaint related to the condominium are not pleaded in service of alleging a claim for false pretenses, false representation, or actual fraud concerning the sale thereof. Instead, they are pleaded in support of Ceruti's § 727 claims. For example, Ceruti alleges that she "had a valid contract to purchase certain real estate from Woodhouse and made a $500 deposit in furtherance of that purchase."[54] Rather than asserting that Woodhouse committed fraud with respect to the sale, however, Ceruti alleges that Woodhouse's failure to list the unrefunded $500 deposit as a priority claim was a false account on her bankruptcy schedules.[55] In other words, the complaint was concerned with how

---

[52] Fed. R. Civ. P. 15(c)(1)(B).
[53] *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (quoting *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 881 (D.C. Cir. 2010)).
[54] Dkt. No. 1, ¶ 11.
[55] *Id.* ¶ 12. Similarly, the complaint alleges that Ceruti loaned Woodhouse $1,000 under an oral agreement

Woodhouse filled out her schedules when she filed bankruptcy in 2015, not with any conduct actionable under § 523(a)(2)(A) regarding the condominium transaction years prior. To be sure, the original complaint mentioned § 523 in passing, contained factual allegations regarding that transaction, and requested, in the alternative, that "the Court rule that Ceruti's claims against Woodhouse are not discharged." But Ceruti did not identify conduct that would have permitted her to except her debts from Woodhouse's discharge; in short, the original complaint did not put Woodhouse on adequate notice that Ceruti intended to pursue a nondischargeability claim under § 523(a)(2)(A) based on Woodhouse's conduct in relation to the condominium transaction. For these reasons, failure to satisfy the standards of Rules 15(a) and (c) provides an additional reason to deny the Motion to Amend.

## IV. CONCLUSION

Ceruti has not shown good cause to amend the Court's scheduling order under Rule 16(b)(4), and the Court declines to exercise its discretion to grant leave to amend under Rule 15(a)(2). As a result, the Court will deny the Motion to Amend. A separate order and judgment will be entered in accordance with this Memorandum Decision.

_____END OF DOCUMENT_____

---

"to be repaid upon the closing of the [REPC]," and that Woodhouse did not repay that sum. But the complaint contains no allegation that Woodhouse obtained the loan through false pretenses or a false representation. Instead, the loan relates to Ceruti's § 727(a) claims: The complaint contends that Woodhouse made a false account by failing to list the loan on her bankruptcy filings and failing to list Ceruti as the creditor with respect to that loan. *Id.* ¶¶ 3-4.

19

**_____oooOooo_____**

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

       Service of the foregoing **MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO AMEND** shall be served to the parties and in the manner designated below.

       **By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

R. Steven Chambers   steve@schamberslaw.com, chamberssr81152@notify.bestcase.com
Dean A. Stuart        dean@richardsandassociateslawoffice.com,
                      lynn@richardsandassociateslawoffice.com

       **By Electronic Mail:** The party listed below was also served at this e-mail address:

Kimberly Ceruti        Kimberly.ceruti@outlook.com

       **By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

Kimberly Ceruti
4733 S. Hiddenwoods Lane
Murray, UT 84107

Kimberly Ceruti
835 East 4800 South, Suite #210-B
Murray, UT 84107-5533