**This order is SIGNED.**

**Dated: March 3, 2022**



**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>JOHN T. WOODHOUSE, *nka* SARA JADE WOODHOUSE,<br><br>Debtor. | Bankruptcy Number: 15-22570<br><br>Chapter 7 |
| KIMBERLY CERUTI,<br><br>                  Plaintiff,<br>v.<br><br>JOHN T. WOODHOUSE, *nka* SARA JADE WOODHOUSE,<br><br>Defendant. | Adversary Proceeding No. 15-2125<br><br>Hon. R. Kimball Mosier |

### MEMORANDUM DECISION ON RULE 56(f)(3)

Plaintiff Kimberly Ceruti entered into an agreement with Defendant Sara Woodhouse to purchase Woodhouse's condominium in 2007. When Woodhouse sold the condominium to another buyer, however, that sparked years of litigation between the parties concerning, among other things, who had the right to receive certain proceeds from that sale. Woodhouse eventually filed

1

bankruptcy, and Ceruti filed this adversary proceeding challenging Woodhouse's entitlement to a discharge in 2015—another gnarled branch of the litigation rooted in that 2007 transaction. Ceruti's complaint principally contends that Woodhouse should be denied a discharge because she omitted or mischaracterized items on her bankruptcy filings, including the sale proceeds.

As the Court will explain in detail in Section II, *infra*, this adversary proceeding has a long procedural history. At this juncture the matter before the Court is its own motion to consider summary judgment *sua sponte* under Rule 56(f)(3), which the parties have fully briefed. Shortly before the hearing at which this Court was to consider summary judgment under Rule 56(f)(3), however, Ceruti filed a Motion for Leave to File Amended Complaint (Motion to Amend). The parties fully briefed that motion, and the Court conducted a hearing at which it heard oral argument and issued its ruling denying the Motion to Amend from the bench. The Court then proceeded to hear oral argument concerning summary judgment in light of that ruling and took the matter under advisement.

The Court has entered its Memorandum Decision on Plaintiff's Motion to Amend, which memorializes its oral ruling denying that motion. Based on the findings and conclusions therein, which the Court incorporates here by reference; after considering the relevant filings in this adversary proceeding and Woodhouse's main bankruptcy case, the parties' Rule 56(f)(3) briefs, and exhibits attached thereto; after considering the parties' oral arguments; and after conducting an independent review of applicable law, the Court issues the following Memorandum Decision granting summary judgment to Woodhouse on all of Ceruti's claims.[1]

---

[1] This Memorandum Decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a), made applicable in adversary proceedings by Fed. R. Bankr. P. 7052. Any of the findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law are similarly deemed, to the extent appropriate, to be findings of fact, and they shall be equally binding as both.

# I. JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(1). The complaint invokes 11 U.S.C. § 523 and § 727, making this a core proceeding within the definition of 28 U.S.C. § 157(b)(2)(I) & (J), and the Court may enter a final order. Venue is appropriate under 28 U.S.C. § 1409.

# II. PROCEDURAL BACKGROUND

The procedural path this adversary proceeding has taken since its inception in 2015 is nothing less than circuitous, marked by numerous delays, a detour to the District Court, and a return to plow old ground. Explaining this history is necessary to understand the procedural posture at this juncture, but lest the telling of a tortuous tale become torturous, the Court will endeavor to condense the events into a concise summary.

Ceruti, represented by the firm of Wood Balmforth LLC at the time, commenced this adversary proceeding against Woodhouse on June 29, 2015. The complaint alleged claims under 11 U.S.C. § 727(a)(2), (a)(4)(A) & (B), and (a)(7)[2] based on allegations that Woodhouse omitted certain information from, and incorrectly represented other information on, her bankruptcy schedules and papers, including amendments thereto. The complaint also made a passing reference in its opening sentence to an unspecified claim under § 523 without naming the particular subsection and paragraph of § 523 relied on or the conduct giving rise to such a claim.

Woodhouse answered, and the Court entered a scheduling order on August 31, 2015, which established, among other things, September 18, 2015 at the deadline for Ceruti to amend her

---

[2] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.

pleadings.[3] That deadline has never been extended.[4] The parties filed what the Court treated as cross-motions for summary judgment,[5] which the Court denied on August 23, 2016.

That October, Ceruti's counsel withdrew from representation, and she has proceeded *pro se* since. The Court set a scheduling conference for November 22, 2016, which the Court continued on Ceruti's motion. During the following year, Ceruti filed a succession of motions to continue various hearings and proceedings, citing medical treatment and difficulty in securing replacement counsel. The Court generally accommodated those motions but denied her motion to continue the final pretrial conference set for October 17, 2017 because the motion failed to comply with the provisions enumerated in a prior order for seeking any further continuances.[6] The Court then scheduled trial for December 12, 2017.

Four days before trial, Ceruti filed a Motion to Withdraw the Reference, alleging that withdrawal was appropriate based on the alleged bias of the Court against her. On September 26, 2018, the United States District Court for the District of Utah entered its order denying her Motion to Withdraw the Reference, concluding that the motion was untimely as a procedural matter and, addressing the merits, had failed to state cause to withdraw the reference.

---

[3] Dkt. No. 7, ¶ 5. All subsequent references to docket numbers are to those in this adversary proceeding unless otherwise indicated.

[4] Ceruti did file a motion to extend the dispositive motion deadline on the day it expired—December 18, 2015. *See* Dkt. No. 10. The Court granted that motion, and while the order granting it stated that "all other deadlines in this matter are adjusted in light of" the new dispositive motion deadline, the order did not establish a new deadline for Ceruti to amend pleadings. Dkt. No. 12, at 2. Moreover, the order required the parties "to file an amended scheduling order setting forth the [adjusted] dates" by January 4, 2016 and provided that if they failed to do so, the Court would conduct a scheduling conference. *Id.* The parties did not file an amended scheduling order, and neither party appeared at the final pretrial conference on March 1, 2016. Crucially, while the Court subsequently entered amended scheduling orders, the deadline for Ceruti to amend pleadings remained unchanged. *See* Dkt. No. 35, ¶ 5 (retaining the September 18, 2015 deadline); Dkt. No. 97, ¶ 4 ("Neither party anticipates joining additional parties or amending the pleadings."). Ceruti did not object to either amended scheduling order.

[5] Dkt. Nos. 17 & 22.

[6] *See* Dkt. No. 63 (citing Dkt. No. 56).

4

Woodhouse obtained new counsel that October who wished to reopen discovery. Ceruti did not object to additional discovery, so at a continued pretrial conference on January 31, 2019, the Court reset certain litigation deadlines, including setting September 15, 2019 as the discovery cut-off date and November 15, 2019 as the dispositive motion deadline.

On November 12, Woodhouse filed a motion to dismiss this adversary proceeding under Rule 12(b)(6). The following month Ceruti also filed what was captioned as a motion to dismiss. Although that motion confused what was actionable under § 523 and § 727, it appeared to suggest that Ceruti did not intend to pursue her claims to deny Woodhouse's discharge any longer but would only attempt to except her claims from Woodhouse's discharge.[7] The motion did not request to amend the complaint. Woodhouse filed a response to that motion, in which she objected "to any attempt to reserve any claims under Section 523 because Plaintiff has not pleaded any causes of action under that section."[8] The Court denied that motion at a hearing on January 14, 2020 because while Ceruti repeated her intention to except only her claims from Woodhouse's discharge, the conduct she identified was only actionable under § 727. The Court also denied Woodhouse's motion to dismiss and set the matter for trial on March 24, 2020.

Shortly thereafter, Woodhouse moved to continue the trial date due to a conflict. The Court entered a Final Pretrial Order on June 26, 2020, which rescheduled trial for August 20, 2020. Two weeks before trial, Ceruti filed a motion to reschedule trial due to the procedural limitations imposed by the COVID-19 pandemic.

---

[7] An accompanying proposed order, prepared by Ceruti, would have dismissed her § 727(a)(4) and (a)(7) claims with prejudice and withdrawn the first prayer for relief in the complaint, which was that the "Court deny [the] discharge of Debtor Woodhouse." Dkt. No. 126, at 1-2.
[8] Dkt. No. 129, at 6.

Prior to the filing of that motion, however, the Court had signed an order continuing the trial without date.[9] That order stated the Court's belief that this matter may be capable of resolution on summary judgment without having to go to trial. The Court conducted a status conference on August 20, 2020, at which it invoked its ability to consider summary judgment on its own under Rule 56(f)(3). The Court also informed Ceruti that she would be able to show the Court on summary judgment the evidence she would present at trial that she believed supported her claims, and the Court would determine if that is sufficient to carry her burden. Through a succession of orders, the Court gave notice to the parties of the material facts it believed may not be genuinely in dispute, provided opportunity for the parties to file briefs on whether summary judgment should be granted in Woodhouse's favor on all of Ceruti's claims based on those facts and any other facts the parties considered material, and set a hearing to consider summary judgment under Rule 56(f)(3) for January 12, 2021.[10] Both parties submitted initial and reply briefs in advance of that hearing.[11]

Ceruti failed to appear at the Rule 56(f)(3) hearing and could not be reached when the Court attempted to contact her, so the Court rescheduled the hearing to February 2, 2021.[12] Four days before that hearing Ceruti filed two motions, one the Motion to Amend and the other seeking a continuance of the Rule 56(f)(3) hearing. She set neither motion for hearing. The Court continued the Rule 56(f)(3) hearing to March 30, 2021, set the Motion to Amend for hearing on the same date, and established a briefing schedule on that motion.[13]

---

[9] Dkt. No. 142. The order was signed on August 5 and entered on the docket the following day.

[10] Dkt. Nos. 145, 152, & 158.

[11] Woodhouse captioned her initial brief as Motion and Memorandum of Sara Woodhouse for Summary Judgment. Dkt. No. 154, at 1. Ceruti has argued that this made Woodhouse the movant and placed on her the requirements that Rule 56 demands of movants. The Court disagrees. Regardless of how Woodhouse captioned it, this document was her opening brief called for by the Court's Order Setting Briefing Schedule in Advance of Rule 56(f)(3) Hearing, Dkt. No. 152. The Court will treat it as such rather than a motion for summary judgment.

[12] Dkt. No. 161.

[13] Dkt. No. 166, at 3-4.

## III. FACTUAL BACKGROUND

In compliance with Rule 56(f)(3), the Court identified for the parties the material facts it believed were not in genuine dispute.[14] With the exception of three facts, which the Court will note below, the parties did not raise an objection to those facts. Therefore, the Court considers them undisputed for purposes of summary judgment. The Court recites them here, along with two additional facts, one proposed by each party and to which the other did not object.

Woodhouse and Ceruti entered into a real estate purchase contract (REPC) whereby Ceruti would purchase Woodhouse's condominium. Ceruti paid $500 as an earnest money deposit. Ceruti alleges that she also loaned Woodhouse $1,000 on September 22, 2007 under an oral agreement to be repaid upon closing of the REPC, and Woodhouse failed to repay that loan.[15]

Woodhouse sold her condominium in 2008 to a different buyer, and $25,828.79 of the sale proceeds were held in escrow because there was a dispute with Ceruti over who was entitled to those funds (Escrowed Proceeds). Woodhouse filed a state court case against Ceruti on August 8, 2008 in which she brought a claim for quiet title and alleged a right to the Escrowed Proceeds. Ceruti filed counterclaims and also asserted a right to the Escrowed Proceeds. The unrepaid $1,000 loan was also at issue in the state court proceeding.

Woodhouse filed a chapter 7 bankruptcy petition on March 25, 2015. On what was then titled Schedule B, Item 35, which called for debtors to list "[o]ther personal property of any kind not already listed," she listed "Escrow [sic] Money" of $30,000. She claimed that money as an

---

[14] Dkt. No. 145, at 3-4.
[15] At a status conference on September 22, 2020, Woodhouse's counsel indicated that Woodhouse disputed that the loan transaction took place and therefore also disputed the allegation that she failed to repay the $1,000. Woodhouse did not elaborate on this dispute in her Rule 56(f)(3) briefs but noted that when she amended her schedules to list the loan, she listed it as disputed. Since the record reflects that Woodhouse did list the $1,000 debt as disputed, the Court will include it in the undisputed facts here.

exempt asset on her Schedule C under Utah Code Ann. § 78B-5-505(1)(a)(xiv), which is the provision, broadly speaking, for exempting retirement accounts.

The Escrowed Proceeds did not constitute funds from a retirement account and could not be exempted under that provision. Peggy Hunt, the Chapter 7 Trustee (Trustee) of Woodhouse's bankruptcy estate, filed an objection to that exemption on the basis that she had "insufficient information about the [Escrowed Proceeds] to verify that it is exempt in whole or in part." Ceruti did not file an objection to that exemption.

Woodhouse did not list Ceruti or her then counsel of record as a creditor or include them on the mailing matrix. She also failed to list the asserted unrepaid $1,000 loan from Ceruti on her schedules. In response to Question 4 on her Statement of Financial Affairs, which at the time asked debtors to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within ONE YEAR immediately preceding the filing of this bankruptcy case," Woodhouse checked a box that said "None."[16]

Woodhouse amended her schedules on June 25, 2015 by listing Wood Balmforth LLC, Ceruti's then counsel of record, on what was then Schedule F and the mailing matrix. She also removed the claimed exemption in the Escrowed Proceeds from Schedule C. Woodhouse amended her schedules again on July 9, 2015. On Schedule B, Item 21, which called for debtors to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," she listed the "Escrow [sic] money that is in dispute with Kimberly D. Ceruti," valued at $30,000. She also added Ceruti as a creditor on Schedule E with a $500 priority claim for an "Unpaid Balance," and on Schedule F for an "Unpaid Balance" incurred on September 22, 2007 in the amount of $1,000, which she listed as disputed. Woodhouse also

---

[16] This is the additional fact proposed by Ceruti, which the record supports.

filed an amended matrix, which added Ceruti to it, and amended her Statement of Financial Affairs

to list, in response to Question 4, one of the state court lawsuits involving Ceruti. She did not

provide the case number, but described the nature of the proceeding as a "[d]isagement [sic] about

who owns the escrow [sic] money and realestate [sic]."[17]

Woodhouse amended her schedules a final time on May 4, 2016 by claiming an exemption

in the Escrowed Proceeds again, this time under Utah Code Ann. § 78B-5-503(2)(a)(ii), which is

the primary personal residence homestead exemption. No objection to that exemption was filed.[18]

## IV. DISCUSSION

### A. Legal Standard Under Rule 56

Under Federal Rule of Civil Procedure 56(a), made applicable in adversary proceedings by

Federal Rule of Bankruptcy Procedure 7056, the Court is required to "grant summary judgment if

---

[17] This was not among the facts the Court identified for the parties, but since it relates to the fact proposed by Ceruti and is supported by the record, the Court includes it here.

[18] Ceruti contends that she did object to that exemption in her Objection to Debtor[']s Motion for Disgorgement of Funds, To Enforce Stay of Proceedings and for Sanctions Against Surety Title Agency, Dkt. No. 29 in Case No. 15-22570. While the Court construes the filings of *pro se* parties liberally, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)), this document is plainly not an objection to Woodhouse's claimed exemption in the Escrowed Proceeds. To be sure, Ceruti offers reasons why she believes that Woodhouse incorrectly claimed a homestead exemption in those proceeds: "It should be noted that Debtor had never perfected a homestead declaration pursuant to Title 78B-5-504. It should be further noted that the according [sic] to Debtor's own personal averment in Section 3 of the Motion the escrow fund constitutes proceeds from the sale of the property, the closing and transfer of which occurred on January 2, 2008. Pursuant to Title 78B-5-503(5)(b) Code [sic] such proceeds are only exempt for one yearn any [sic] event, the Trustee has abandoned the estate in toto." Dkt. No. 29 in Case No. 15-22570, at 3-4. But an objection to exemption requires invoking the particular procedure created by Rule 4003(b), and this Ceruti did not do. *Pro se* parties must follow the same rules of procedure as other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)). Merely questioning the grounds for Woodhouse's claimed homestead exemption in the Escrowed Proceeds without following the Rule 4003(b) procedure does not qualify as an objection to exemption. Accordingly, when the Court states that no objections were filed to Woodhouse's exemption of the Escrowed Proceeds under the primary personal residence homestead exemption, it means that no party objected to that exemption under Rule 4003(b). Moreover, Ceruti's purported objection was filed on August 15, 2017, more than a year after the expiration of the thirty-day period to object to exemptions triggered by Woodhouse's May 4, 2016 amendments, and was therefore untimely. *See* Fed. R. Bankr. P. 4003(b)(1).

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] Substantive law determines which facts are material and which are not. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[20] Whether a dispute is "genuine" turns on whether "the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party."[21] In sum, the Court's function at the summary judgment stage is to "determine whether there is a genuine issue for trial."[22]

Here, the Court invoked the procedure afforded by Rule 56(f)(3) to consider summary judgment on its own. That procedure requires that the Court "identify[] for the parties material facts that may not be genuinely in dispute" and "giv[e] notice and a reasonable time to respond,"[23] and permits the Court to "grant summary judgment sua sponte so long as the losing party was on notice that [she] had to come forward with all of [her] evidence."[24] As shown in the procedural history of the case in Section II, *supra*, the Court believes it complied with those criteria.

Although the Court previously denied the parties' cross-motions for summary judgment in 2016, that does not preclude invocation of Rule 56(f)(3). In the first place, while Woodhouse's motion for summary judgment ostensibly sought dismissal of Ceruti's entire complaint, it dealt exclusively with the § 727(a)(4)(A) claim and argued that Woodhouse lacked the requisite fraudulent intent under that provision because she promptly corrected any errors or omissions in her bankruptcy filings.[25] By contrast, this decision covers all of Ceruti's claims and, while it

---

[19] Fed. R. Civ. P. 56(a).
[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[21] *Id.*
[22] *Id.* at 249.
[23] Fed. R. Civ. P. 56(f)(3).
[24] *A.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016) (quoting *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 892 (10th Cir. 1997)).
[25] Dkt. No. 22, at 2-7.

concludes that Woodhouse lacked fraudulent intent under the § 727(a) claims where it is a required element, it does so on legal grounds different from those advocated by Woodhouse in her motion for summary judgment. Moreover, "district courts generally remain free to reconsider their earlier interlocutory orders" without constraint from the law of the case doctrine, which "does not apply 'to rulings revisited prior to entry of a final judgment.'"[26] Since the denial of the parties' cross-motions was interlocutory, the Court may revisit the issues raised in those motions here. Nor did the proximity to trial at the time the Court signaled its intent to consider summary judgment under Rule 56(f)(3) prevent it from doing so. "District courts unquestionably possess the power to enter summary judgment sua sponte, even on the eve of trial."[27]

Ordinarily, the moving party bears the burden to show that it is entitled to summary judgment.[28] But where the Court has moved to consider summary judgment on its own under Rule 56(f)(3) in favor of Woodhouse, Ceruti must come forward with evidence showing the existence of a genuine dispute regarding her claims. A party establishes its position on material facts by citing to "particular parts of materials in the record,"[29] and asserted facts unsupported by the record "carry no probative weight in summary judgment proceedings."[30] Ceruti may not rely solely on allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."[31] If the record reflects that Ceruti "does not have enough evidence to carry [her] burden of persuasion at trial," summary judgment is appropriate.[32]

---

[26] *Stewart v. Beach*, 701 F.3d 1322, 1329 (10th Cir. 2012) (quoting *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011)).

[27] *Norse v. City of Santa Cruz*, 629 F.3d 966, 971 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)).

[28] *Celotex*, 477 U.S. at 323.

[29] *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)(A)).

[30] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)).

[31] *Celotex*, 477 U.S. at 324.

[32] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002) (citation omitted).

The Court will view the record and draw all reasonable inferences therefrom in the light most favorable to Ceruti,[33] but the Court will not weigh the evidence or make credibility determinations.[34]

## B. The § 523 Claim

Ceruti's § 523 claim consists exclusively of a single citation to that section—without specifying a subsection or paragraph—in the introductory sentence of the complaint and an alternative prayer for relief that "the Court rule that Ceruti's claims against Woodhouse are not discharged."[35] Ceruti's Rule 56(f)(3) briefs fail to mention the section at all.

This Court is obliged to construe the filings of *pro se* parties liberally and therefore holds Ceruti's Rule 56(f)(3) briefs "to a less stringent standard than formal [documents] drafted by lawyers,"[36] meaning that it can make allowances for, among other things, a "failure to cite proper legal authority, . . . confusion of various legal theories, . . . [and] unfamiliarity with pleading requirements."[37] This rule gives the Court leeway in how it can read and interpret Ceruti's filings, but it stops short of permitting the Court to create arguments for her. In short, the Court "should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations."[38]

The Court concludes that Ceruti has not pleaded a § 523 claim in her complaint, nor has she provided argument or evidence in support of one in her Rule 56(f)(3) briefs, even after a liberal

---

[33] *See, e.g.*, *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (citation omitted).

[34] *Nat'l Am. Ins. Co. v. Am. Re-Insurance Co.*, 358 F.3d 736, 742-43 (10th Cir. 2004) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994)).

[35] Dkt. No. 1, at 5.

[36] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

[37] *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110). The Tenth Circuit has made clear that this rule "applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall*, 935 F.2d at 1110 n.3 (citations omitted).

[38] *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) (citing *Hall*, 935 F.2d at 1110).

12

reading of those documents. The Court will not sift the facts of this case then attempt to descry and evaluate potential § 523(a) claims.[39] To do so would be mere speculation at best, advocacy at worst. Because Ceruti has not shown the existence of a genuine dispute of material fact concerning a § 523 claim, the Court will grant summary judgment to Woodhouse with respect to such claim.

### C. The § 727(a)(4) Claim

Ceruti's § 727(a)(4) claim forms the crux of her case, and her complaint invokes two subparagraphs of that provision: § 727(a)(4)(A) and (B). As with her § 523 claim, however, the complaint mentions the § 727(a)(4)(B) claim perfunctorily, and Ceruti's Rule 56(f)(3) briefs do not refer to it at all. The Court will address this claim first.

Section 727(a)(4)(B) denies a debtor's discharge when the debtor, "knowingly and fraudulently, in or in connection with the case, presented or used a false claim." "To deny a debtor's discharge under [this provision], the debtor must have presented or used an inflated or fictitious claim in a bankruptcy case, with intent to defraud."[40] Section 727(a)(4)(B) claims are uncommon and "generally involve the scheduling of non-existent debts, the scheduling of inflated debts, or the filing by the debtor of a false proof of claim."[41]

Ceruti has not even alleged, much less produced evidence, that Woodhouse has done any of these things. The only allegation concerning § 727(a)(4)(B) is that Woodhouse's claiming an interest in the Escrowed Proceeds on her Schedule B was a false claim.[42] But "claim" has a specific meaning within title 11: a "right to payment."[43] Asserting an interest in property does not involve the presentation or use of a false right to payment, nor is it equivalent to scheduling non-

---

[39] The Court cannot consider any of the allegations in Ceruti's proposed amended complaint. Doing so would vitiate the Court's ruling on the Motion to Amend.

[40] *Painewebber Inc. v. Gollomp (In re Gollomp)*, 198 B.R. 433, 439 (S.D.N.Y. 1996) (citations omitted).

[41] *Corcoran v. McCabe (In re McCabe)*, 543 B.R. 182, 192 (Bankr. E.D. Pa. 2015) (quoting *Webb v. Isaacson (In re Isaacson)*, 478 B.R. 763, 792 (Bankr. E.D. Va. 2012)).

[42] Dkt. No. 1, ¶ 8.

[43] § 101(5)(A).

existent or inflated debts or filing a false proof of claim. This allegation, if it is actionable at all,

falls under    § 727(a)(4)(A), not (B).[44] Because Ceruti has not produced evidence showing the

existence of a genuine dispute with respect to her claim under § 727(a)(4)(B), the Court will grant

summary judgment to Woodhouse on that claim.

Section 727(a)(4)(A) denies a debtor's discharge when she "knowingly and fraudulently, in

or in connection with the case, made a false oath or account." To prevail under this provision, a

---

[44] Ceruti has not argued that Woodhouse's exemption of the Escrowed Proceeds constitutes the presentation or use of a false claim under § 727(a)(4)(B), though some plaintiffs in § 727(a) proceedings have argued that claiming an exemption to which the debtor is not entitled is actionable under that provision. This argument appears to be based, in part, on dicta from *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992). There, the Supreme Court held that property claimed as exempt becomes exempt if not challenged within the Rule 4003(b) thirty-day objection period, even if the debtor lacked a colorable basis for claiming the exemption. *Id.* at 643-44. To allay concerns that such a holding would "create improper incentives" and "lead debtors to claim property exempt on the chance that the trustee and creditors, for whatever reason, will fail to object to the claimed exemption on time," the Court noted that "[d]ebtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings." *Id.* at 644. The Court then offered an illustrative list of provisions that "may limit bad-faith claims of exemptions by debtors": Rules 1008 and 9011, the portion of the U.S. Code that imposes criminal penalties for bankruptcy fraud, and, notably, § 727(a)(4)(B). *Id.*

Although "[t]he Supreme Court did not hold that § 727(a)(4)(B) applies to overstated claims of exemptions," *Parnes v. Parnes (In re Parnes)*, 200 B.R. 710, 721 (Bankr. N.D. Ga. 1996), this Court is "bound by Supreme Court dicta almost as firmly as by [its] outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1125 (10th Cir. 2015) (quoting *United States v. Serawop*, 505 F.3d 1112, 1122 (10th Cir. 2007)). The Supreme Court has endorsed the statement that § 727(a)(4)(B) encompasses fraudulent exemption claims once in the three decades since *Taylor*, albeit in dissent, *Schwab v. Reilly*, 560 U.S. 770, 809 (2010) (Ginsburg, J., dissenting). On the other hand, some courts have construed the plain language of § 727(a)(4)(B) to exclude fraudulent exemption claims. Relying on the definition of "claim" and contrasting it with "assertion," one court held that "the act of listing a homestead exemption cannot be a 'false claim' within the meaning of section 727(a)(4)(B)." *Garcia v. Garcia (In re Garcia)*, 168 B.R. 403, 407 (D. Ariz. 1994). The *Schwab* majority, however, used language that casts doubt on that textual reading and suggests that a claim of exemption can qualify as a right to payment in some circumstances. *See Schwab*, 560 U.S. at 792 ("If an interested party does not object to the claimed interest by the time the Rule 4003 period expires, title to the asset will remain with the estate pursuant to § 541, and the debtor *will be guaranteed a payment in the dollar amount of the exemption*.") (emphasis added).

The Court need not resolve the question of whether § 727(a)(4)(B) covers fraudulent exemption claims because Ceruti has not argued that Woodhouse's claimed exemptions in the Escrowed Proceeds are actionable under § 727(a)(4)(B). Even if Ceruti's complaint and Rule 56(f)(3) briefs could be construed to make such an argument, the Court will address the exemption issue within the context of § 727(a)(4)(A). The Court discerns no prejudice to Ceruti in doing so, since that provision is subject to the same knowledge, intent, and materiality requirements as § 727(a)(4)(B). *E.g., Dranichak v. Rosetti*, 493 B.R. 370, 378 (N.D.N.Y. 2013) (citation omitted).

plaintiff "must establish that: 1) the debtor made a false statement under oath; 2) knowing it to be false; 3) with fraudulent intent; and 4) the statement was material."[45] The false oath contemplated by § 727(a)(4)(A) "may be either '(1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings."[46] Ceruti's allegations consist solely of the former category. The second element requires that the debtor act "deliberately and consciously" in making the statement in question, such as by signing her bankruptcy schedules and statement of financial affairs knowing that they were incorrect or incomplete.[47] As for the third element, "[a] debtor's intent to defraud or deceive can be proven by evidence of either (1) the debtor's actual intent to deceive or (2) reckless disregard for the truth."[48] Intent may "be established by circumstantial evidence or by inferences drawn from [the debtor's] course of conduct."[49] "[I]f a false statement is due to mere mistake or inadvertence," however, that does not constitute a basis to deny a debtor's discharge.[50] A lack of motive to conceal assets will support a finding of mistake or inadvertence.[51] As regards the fourth element, a false oath counts as material "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of [her] property."[52] Ceruti

---

[45] *Wagner v. Wagner (In re Wagner)*, 527 B.R. 416, 430 (10th Cir. BAP 2015) (citing *Sierra Chems., LLC v. Mosley (In re Mosley)*, 501 B.R. 736, 742 (Bankr. D.N.M. 2013)); *see also Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir. 1997) ("In order to deny a debtor's discharge pursuant to this provision, a creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact." (citing *Cobb v. Hadley (In re Hadley)*, 70 B.R. 51, 54 (Bankr. D. Kan. 1987))).

[46] *U.S. Trustee v. Garland (In re Garland)*, 417 B.R. 805, 814 (10th Cir. BAP 2009) (quoting 6-27 *Collier on Bankruptcy* ¶ 727.04[1][c] (15th ed. rev. 2009)).

[47] *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1198 (9th Cir. 2010).

[48] *Gobindram v. Bank of India*, 538 B.R. 629, 637 (E.D.N.Y. 2015) (citations omitted).

[49] *Cheung v. Fletcher*, 551 B.R. 455, 461 (E.D. Cal. 2016) (citing *Devers v. Bank of Sheridan, Mont. (In re Devers)*, 759 F.2d 751, 753 (9th Cir. 1985)).

[50] *In re Brown*, 108 F.3d at 1294-95 (citing *In re Butler*, 38 B.R. 884, 889 (Bankr. D. Kan. 1984)).

[51] *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1157 (10th Cir. 2007) (citations omitted).

[52] *In re Garland*, 417 B.R. at 814 (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984)).

bears the burden to show these elements by a preponderance of the evidence, as she does with all of her § 727(a) claims.[53]

The Court tallies six alleged deficiencies with Woodhouse's statements and schedules that underlie Ceruti's § 727(a)(4)(A) claim: (1) Woodhouse's claiming an interest in and exempting the Escrowed Proceeds, (2) the failure to list Ceruti's $500 earnest money deposit as a priority claim pursuant to § 507(a)(7), (3) the failure to list the $1,000 loan from Ceruti, (4) the failure to list Ceruti as a creditor—particularly a secured creditor with a secured interest in the Escrowed Proceeds, (5) the failure to provide Ceruti notice of the bankruptcy case, and (6) the failure to disclose the state court litigation concerning Ceruti.

Ceruti's theory of the case contends that these statements and omissions are not accidental or unrelated, but rather evince a coordinated plan by Woodhouse to circumvent the state court litigation and "improperly gain control over the Escrowed [Proceeds]," thereby "defrauding Ceruti of her proper recovery."[54] To accomplish this scheme, Woodhouse would keep Ceruti in the dark about her bankruptcy case then assert an interest in the Escrowed Proceeds and exempt that interest before Ceruti could object. Although many § 727(a)(4)(A) claims involve the outright omission of assets from a debtor's schedules, Ceruti asserts that Woodhouse's plan was different: Her disclosure and exemption of the Escrowed Proceeds was a purposeful "hide in plain sight strategy" used "to conceal the true nature of the only appreciable asset she identified in an otherwise no asset bankruptcy case from the trustee" and creditors.[55] The Court construes Ceruti's argument to be that Woodhouse fraudulently intended to engage in what is known as "exemption by declaration" or

---

[53] *See First Nat'l Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d 1156, 1157 n.2 (10th Cir. 1991) ("As stated in *Grogan*, the preponderance of the evidence standard is applicable in civil actions between private litigants unless particularly important individual interests or rights are at stake. A debtor does not have an interest in discharge sufficient to require a heightened standard of proof." (citing *Grogan v. Garner*, 498 U.S. 279, 284-87 (1991))).

[54] Dkt. No. 1, ¶ 18; *see also* Dkt. No. 157, ¶¶ 18-19.

[55] Dkt. No. 157, ¶¶ 5, 11.

"exemption by ambush," the "bad-faith practice among certain debtors of claiming exemptions that have no plausible statutory basis in the hope that the trustee [or another party in interest] will fail to object timely."[56] Under this theory, Woodhouse intended to wait out the Rule 4003(b)(1) thirty-day objection period, after which time her exemption in the Escrowed Proceeds, if unobjected to, would stand under the holding of *Taylor*,[57] and she could shield that asset from Ceruti and her other creditors.

Ceruti has provided no direct evidence of Woodhouse's intent to perpetrate such a scheme;[58] her case for proving fraudulent intent therefore rests solely on circumstantial evidence and inferences drawn from Woodhouse's course of conduct. After viewing the record in the light most favorable to Ceruti, the Court concludes that a reasonable fact finder could not find that Woodhouse acted with fraudulent intent.

Woodhouse lacks the requisite intent because neither she nor any other debtor can accomplish the scheme Ceruti alleges. It is a bedrock principle of bankruptcy law that "[p]roperty interests are created and defined by state law."[59] This means that when a debtor files bankruptcy "whatever rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less. Section 541 'is not intended to expand the debtor's rights against others more than they exist at the commencement of the case.'"[60]

---

[56] *In re Levitt*, 137 B.R. 881, 883 (Bankr. D. Mass. 1992).

[57] *See supra* note 44.

[58] At oral argument on March 30, 2021, Ceruti asserted that Woodhouse admitted to signing her bankruptcy filings with fraudulent intent. This is a notable departure from Ceruti's motion for summary judgment filed on April 27, 2016, where her counsel at the time argued that Woodhouse's "fraudulent intent can and should be inferred from the undisputed facts in this case." Dkt. No. 17, at 17. Ceruti has not directed the Court to evidence supporting the assertion that Woodhouse admitted to acting with fraudulent intent. Therefore, the Court construes Ceruti's argument to be that Woodhouse's intent can be gleaned from circumstantial evidence and inferred from her course of conduct.

[59] *Butner v. United States*, 440 U.S. 48, 55 (1979).

[60] *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984) (quoting H.R. Rep. No. 95-595, at 367 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323).

When Woodhouse filed bankruptcy, only the interest she possessed in the Escrowed Proceeds under Utah state law, if any, entered her bankruptcy estate. If Woodhouse lacked an interest in the Escrowed Proceeds, listing them on her schedules did not confer an interest on her. By way of illustration, a debtor could not, as if by incantation, obtain an interest in the Takamikura throne or St. Edward's Crown by listing them on her schedules. But even if Woodhouse did hold an interest in the Escrowed Proceeds, she could not augment that interest nor diminish or defeat Ceruti's interest, if any, by claiming an interest in the Escrowed Proceeds on her schedules. In short, Woodhouse asserting in bankruptcy that the Escrowed Proceeds are hers does not make it so; only state law can decide the respective interests in those funds.

A similar rationale holds true for Woodhouse's exemptions. If Woodhouse held no interest in the Escrowed Proceeds, claiming an exemption in them did not create one. If she did hold an interest in them, claiming an exemption, even a valid exemption, would not defeat any interest Ceruti has in the Escrowed Proceeds under state law. Although exemptions allow debtors to withdraw assets or interests in property up to certain values from the estate,[61] they cannot eliminate state-law interests other parties may have in those assets. In this way, Woodhouse cannot circumvent the state court litigation and deprive Ceruti of her asserted right to the Escrowed Proceeds by claiming them exempt in bankruptcy.

While Ceruti's allegations make it sound like Woodhouse plotted some arcane form of skullduggery, the harms Ceruti imagines are categorically impossible. Woodhouse cannot wrest control of the Escrowed Proceeds from Ceruti by filing bankruptcy, listing an interest in them, and claiming that interest as exempt. Because the Code does not permit Woodhouse to do what Ceruti alleges she intended to, the motive Ceruti infers from Woodhouse's course of conduct in this case

---

[61] *Schwab*, 560 U.S. at 791 (citations omitted).

falls apart. And without that motive, the Court concludes that Woodhouse lacked, as a matter of law, the fraudulent intent required by § 727(a)(4).

The circumstances regarding Woodhouse's disclosures also support the conclusion that she did not act with the requisite intent. It is undisputed that Woodhouse initially listed the Escrowed Proceeds as "Escrew [sic] Money" on her Schedule B. While Ceruti contends that Woodhouse's claiming an interest in those funds was a false oath,[62] such an argument necessarily defeats itself by negating the intent and materiality elements of § 727(a)(4)(A).[63] What's more, Woodhouse acted correctly under the Code by asserting an interest in the Escrowed Proceeds. A debtor's bankruptcy estate includes all of her "legal or equitable interests . . . in property as of the commencement of the case."[64] "[T]he scope of § 541 is broad" and captures "'[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative.'"[65] The Escrowed Proceeds were placed into escrow because Woodhouse and Ceruti disagreed over who was entitled to them, and each asserted a right to them in at least one of the state court lawsuits concerning the sale of Woodhouse's condominium. Ceruti has produced no evidence that the state court has determined that Woodhouse lacked any interest in the Escrowed Proceeds. As a result, Woodhouse was obliged—after claiming an interest in them in the state court litigation—to disclose what she believed to be her interest in them here. That Ceruti contests Woodhouse's right to the Escrowed Proceeds does not alter that conclusion. "[A] debtor must schedule any property he owns or claims to own, whether or not the plaintiff agrees with the debtor's assessment of

---

[62] Dkt. No. 1, ¶¶ 8, 14.

[63] *See Smith v. Smith (In re Smith)*, 489 B.R. 875, 895 (Bankr. M.D. Ga. 2013) ("[T]he estate has no interest in property the debtor has no interest in, and thus the inclusion does not materially relate to the bankruptcy case. Moreover, intent to defraud in a Chapter 7 case through claiming to own *more* property is difficult to fathom.").

[64] § 541(a)(1).

[65] *Parks v. Dittmar (In re Dittmar)*, 618 F.3d 1199, 1207 (10th Cir. 2010) (quoting *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other grounds by Law v. Siegel*, 571 U.S. 415 (2014)).

ownership. . . . [D]ebtors should err on the side of overinclusion."[66] Listing an asset that Woodhouse may have an interest in is proper—indeed, required—and does not show fraudulent intent.

In addition to claiming an interest in the Escrowed Proceeds, Woodhouse initially claimed that interest as exempt under Utah Code Ann. § 78B-5-505(1)(a)(xiv). It is likewise undisputed that Woodhouse could not claim this exemption because the Escrowed Proceeds did not constitute funds from a retirement account. To Ceruti, this exemption shows fraudulent intent because it was part of Woodhouse's supposed hide in plain sight strategy. The Court disagrees.

To hide something in plain sight is to make it inconspicuous in its surroundings. In the context of a chapter 7 bankruptcy, this camouflage technique must avoid the attention of the trustee. As a general rule, however, a debtor would do better concealing an elephant behind a broomstick than hiding an asset from a trustee by listing and exempting it in bankruptcy. The Code imposes certain duties on trustees, including, as relevant here, "investigat[ing] the financial affairs of the debtor" and "collect[ing] and reduc[ing] to money the property of the estate for which such trustee serves."[67] Trustees are therefore statutorily obliged to scrutinize a debtor's financial affairs, with what can colorfully be described as a "jaundiced eye and scowling mien," in search of assets to pay creditors.[68] Disclosing and exempting an asset brings it under the gaze of that jaundiced eye, which is likely to apply additional scrutiny where the asset appears unusual or the exemption dubious.[69]

---

[66] *In re Smith*, 489 B.R. at 894.
[67] § 704(a)(1), (4).
[68] *See Interwest Bus. Equip., Inc. v. U.S. Trustee (In re Interwest Bus. Equip., Inc.)*, 23 F.3d 311, 317 (10th Cir. 1994).
[69] If a debtor's fraudulently-claimed exemption somehow evades the trustee's attention and reaches the end of the Rule 4003(b)(1) thirty-day period without objection, there is a fail-safe. Rule 4003(b)(2) provides that "[t]he trustee may file an objection to a claim of exemption at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim of exemption."[69] Added in 2008, this extension of "the

That is precisely what happened in this case. When Woodhouse initially disclosed $30,000 of "Escrew [sic] Money" on her schedules and exempted it under a provision that facially had no apparent relationship to it, the Trustee took notice and objected because she lacked sufficient information to verify the exemption. In other words, Woodhouse's purported scheme attracted the Trustee's attention rather than avoiding it. The assertion that Woodhouse intended to hide the Escrowed Proceeds in plain sight by disclosing and exempting them simply does not hold water. To be sure, debtors do not lack fraudulent intent merely because they bungle their attempts to pull off fraudulent schemes. But the record here shows no evidence of a botched plan to defraud Ceruti and creditors. Woodhouse's purported hide in plain sight scheme was so poorly executed that it instead looks like what it actually was: an initial disclosure of the Escrowed Proceeds combined with a mistaken claim of exemption. This is particularly true where Woodhouse later amended her exemption in the Escrowed Proceeds and no party in interest objected.

Woodhouse's omission of Ceruti and her claims from her bankruptcy filings also fails to show fraudulent intent. The Court has already concluded that Woodhouse did not intend to engage

---

deadline for trustees to object to an exemption when the exemption claim has been fraudulently made will permit the court to review and, in proper circumstances, deny improperly claimed exemptions." Fed. R. Bankr. P. 4003(b) advisory committee's note to 2008 amendment. This provision highlights the difficulty in pulling off the scheme alleged by Ceruti.

It must be noted that "Rule 4003(b)(2) does not provide an independent, substantive basis for objecting to a debtor's exemption claim." *Moyer v. Rosich (In re Rosich)*, 582 B.R. 694, 697 (Bankr. W.D. Mich. 2018) (*citing In re Hurt*, 542 B.R. 798, 803-04 (Bankr. E.D. Tenn. 2015)). Instead, any basis to deny a debtor's exemptions must come from applicable exemption law—either the Code or state law. *Siegel*, 571 U.S. at 425; *see also In re Bogan*, 534 B.R. 346, 348 (Bankr. W.D. Wis. 2015) ("[T]he Code defines the creation, alteration or elimination of substantive rights[;] the Bankruptcy Rules only define the process by which these privileges may be effected." (quoting *In re Hanover Indus. Mach. Co.*, 61 B.R. 551, 552 (Bankr. E.D. Pa. 1986))). The Code itself does not repose an "equitable power in bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct," though certain state exemption laws "may provide that certain types of debtor misconduct warrant denial of the exemption." *Siegel*, 571 U.S. at 425.

Therefore, Ceruti's allegation that Woodhouse fraudulently exempted the Escrowed Proceeds would not provide a basis to deny the exemption unless Utah law contains such a provision. A finding that Woodhouse fraudulently claimed the exemption would, at most, merely extend the time under Rule 4003(b)(2) for the Trustee to object to the exemption, which objection would have to be based on Utah exemption law. *See In re Rosich*, 582 B.R. at 698 ("[T]he sole purpose of Rule 4003(b)(2) is to create a deadline, not grounds, for objecting to exemptions.").

in a hide in plain sight strategy, so the initial failure to list Ceruti and her claims was not in furtherance of such a scheme, as Ceruti alleges. And if the omissions were not part of this scheme, they could only hurt Woodhouse. While even unlisted debts are discharged in no-asset chapter 7 cases, § 523(a)(3) generally excepts them from discharge in asset cases.[70] By omitting Ceruti and her claims, therefore, Woodhouse ran the risk that any pre-petition claim Ceruti had against her would survive her discharge, all without apparent benefit to her. Where Woodhouse's omissions could only harm her, the Court concludes as a matter of law that they were mistakes or errors and accordingly made without fraudulent intent.

The Court concludes that the impossibility of Woodhouse altering the parties' state-law rights in the Escrowed Proceeds, combined with the circumstances surrounding Woodhouse's statements and omissions in her bankruptcy filings, demonstrate as a matter of law the absence of a genuine dispute regarding Woodhouse's intent. Since Ceruti would bear the burden of persuasion on that element, her failure to show the existence of a genuine dispute of material fact with respect to it requires the Court to grant summary judgment to Woodhouse.

### D.  The § 727(a)(2) Claim

Section 727(a)(2) denies a debtor's discharge where "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition; or property of the estate, after the date of the filing of the petition." Generally speaking, this provision "reinforces an affirmative prohibition against fraudulent transactions and other activities designed to injure

---

[70] *See, e.g.*, *In re Guseck*, 310 B.R. 400, 402 (Bankr. E.D. Wisc. 2004) ("[U]nless § 523 provides otherwise, the discharge covers every pre-petition debt, whether or not the debt is scheduled by the debtor . . . . Stated another way, the Chapter 7 discharge is good against the world, including unscheduled creditors." (citation and internal quotation marks omitted)).

22

creditors by denying access to potentially valuable assets."[71] The debtor's intent must be actual—constructive intent will not suffice—which "may be established by circumstantial evidence, or by inferences drawn from a course of conduct."[72] For purposes of § 727(a)(2), "[c]oncealment means withholding knowledge of an asset by failing or refusing to divulge owed information."[73]

In this case, Ceruti's § 727(a)(2) claim overlaps with her § 727(a)(4) claim: She contends that an alleged false oath concerning an asset under the latter necessarily constitutes concealment of that asset under the former.[74] As with the § 727(a)(4) claim, Ceruti focuses on one asset in particular—the Escrowed Proceeds—arguing that Woodhouse's statements on her bankruptcy schedules evince a "blatant attempt to conceal the true nature of the only appreciable asset she identified in an otherwise no asset bankruptcy case from the trustee."[75]

But Ceruti's § 727(a)(2) claim suffers from a glaring defect: Woodhouse disclosed the Escrowed Proceeds on her Schedule B from the outset of her case, meaning that the existence of the Escrowed Proceeds was a matter of public record available for all to see. That disclosure is the very antithesis of concealment and is therefore incompatible with the assertion that Woodhouse withheld knowledge of the Escrowed Proceeds. Moreover, Ceruti has not produced any evidence

---

[71] *Davis v. Osborne (In re Osborne)*, 476 B.R. 284, 293 (Bankr. D. Kan. 2012) (quoting 4 *Norton Bankruptcy L. & Prac.*, § 86.4 (3d ed. 2012)).

[72] *Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1249 (10th Cir. 2008) (quoting *Marine Midland Bus. Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1077 (10th Cir. 1991) *and Farmers Coop. Ass'n of Talmage, Kan. v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982)).

[73] *Los Alamos Nat'l Bank v. Lamey (In re Lamey)*, 574 B.R. 240, 247 (Bankr. D.N.M. 2017) (citing *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 156 (Bankr. N.D. Ohio 1998)).

[74] It is not uncommon for plaintiffs to take a similar approach. *See In re Lamey*, 574 B.R. at 248 ("Omitting information in a debtor's bankruptcy schedules may also constitute post-petition concealment for purposes of § 727(a)(2)(B)." (citing *In re Hadley*, 70 B.R. at 53)); *Wachovia Bank, Nat'l Ass'n v. Voccia (In re Voccia)*, 477 B.R. 625, 633 (Bankr. E.D. Va. 2011) ("The exceptions to discharge for concealment of assets under § 727(a)(2) and false oath under § 727(a)(4) usually go hand in hand because a debtor who fraudulently conceals assets in the petition has also necessarily made a false oath by signing the petition."); *Freelife Int'l, LLC v. Butler (In re Butler)*, 377 B.R. 895, 911 (Bankr. D. Utah 2006) ("Improper acts alleged under § 727(a)(2) are also often alleged as improper under § 727(a)(4)(A).").

[75] Dkt. No. 157, ¶ 5; *see also* Dkt. No. 1, ¶ 9 (alleging that claiming an exemption in the Escrowed Proceeds under the retirement account exemption is "an improper concealment of property under . . . § 727(a)(2)").

23

suggesting that Woodhouse attempted to conceal the Escrowed Proceeds by, for example, misleading the Trustee or failing to divulge information about the asset at the § 341 meeting.

To the extent that Ceruti's § 727(a)(2) claim relies on her argument that Woodhouse hid the Escrowed Proceeds in plain sight by listing them on her Schedule B and exempting them, that also fails for the same reasons articulated with respect to the § 727(a)(4)(A) claim.

The Court concludes as a matter of law that Woodhouse's disclosure and exemption of the Escrowed Proceeds was not a concealment under § 727(a)(2). She made the asset conspicuous to creditors and the Trustee. In addition, because Woodhouse disclosed and exempted the Escrowed Proceeds from the beginning of her case and such actions expose a debtor to increased scrutiny, the Court also concludes that Woodhouse lacked the intent to conceal them. The Court will grant summary judgment to Woodhouse on this claim.

### E. The § 727(a)(7) Claim

Section § 727(a)(7) operates to deny a debtor's discharge if she "has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider."

> The purpose and intent of Section 727(a)(7) of the Bankruptcy Code is to prevent debtors who are involved in several bankruptcy proceedings from failing to cooperate in a proceeding in which their own discharge is not at issue such as a corporate proceeding or a proceeding involving a partner or a relative and then, subsequently or simultaneously, obtaining an individual discharge in another case. Section 727(a)(7) is a statutory provision which ties related cases together so that misconduct in one case by an individual may be chargeable against that individual in other related proceedings.[76]

---

[76] *Associated Bank, N.A. v. Sever (In re Sever)*, 438 B.R. 612, 619 (Bankr. C.D. Ill. 2010) (quoting *Whiteside F.S. Inc. v. Siefkin*, 46 B.R. 479, 481 (N.D. Ill. 1985)).

To deny a debtor's discharge under § 727(a)(7), a plaintiff must establish that "(1) the elements of sections 727(a)(2), (3), (4), (5), or (6) are met; (2) the actions occurred during the current case or within one year before the filing of the petition; and (3) the actions are in connection with the bankruptcy case of an insider."[77]

Ceruti's § 727(a)(7) claim appears to be something of an afterthought—her complaint mentions it only once, alleging that Woodhouse's exemption of the Escrowed Proceeds constitutes a false statement and concealment of property in violation of § 727(a)(7).[78] She also failed to mention it in her Rule 56(f)(3) briefs. Ultimately, Ceruti did not produce evidence sufficient to create a genuine dispute concerning the first and third elements of a § 727(a)(7) claim. Since the Court has already concluded that Woodhouse is entitled to summary judgment on Ceruti's § 727(a)(2) and (a)(4) claims and Ceruti has not alleged any other violations of § 727(a) that would satisfy the first element, the Court must grant summary judgment to Woodhouse on that element. As regards the third: Ceruti failed to show evidence of, or even allege, that Woodhouse's actions occurred in connection with the bankruptcy case of an insider. To the contrary, the allegations regarding Woodhouse's statements in her bankruptcy filings concern her case, and her case alone. The only other bankruptcy case mentioned in Ceruti's briefing is the 2010 case of CFR, but she has provided no evidence that CFR is an insider of Woodhouse or that the actions at issue took place in connection with CFR's bankruptcy case.

Because Ceruti has failed to show the presence of a genuine dispute of material fact on the first and third elements of her § 727(a)(7) claim, the Court will grant summary judgment to Woodhouse on that claim.

---

[77] *De Anda v. Song (In re Song)*, 449 B.R. 84, 97 (Bankr. N.D. Cal. 2011).
[78] Dkt. No. 1, ¶ 10.

## V. CONCLUSION

Based on the record before it, the Court concludes that Woodhouse is entitled to summary judgment on all of Ceruti's claims. The Court understands the contentious history between the parties and acknowledges Ceruti's sincerely held belief that Woodhouse wronged her with respect to the condominium transaction and ought not to escape responsibility for that. But §§ 523 and 727 are not all-encompassing tools of retributive justice. To invoke them one must satisfy their elements, and on that point Ceruti's arguments and evidence fall short. Woodhouse's actions do not merit a denial of her discharge as a matter of law, nor do they require that any debt to Ceruti be excepted from that discharge. A separate order and judgment will be entered in accordance with this Memorandum Decision.

_____END OF DOCUMENT_____

_____oOo0oOo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION ON RULE 56(f)(3)** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

R. Steven Chambers   steve@schamberslaw.com, chamberssr81152@notify.bestcase.com
Dean A. Stuart        dean@richardsandassociateslawoffice.com,
                      lynn@richardsandassociateslawoffice.com

**By Electronic Mail:** The party listed below was also served at this e-mail address:

Kimberly Ceruti        Kimberly.ceruti@outlook.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

Kimberly Ceruti
4733 S. Hiddenwoods Lane
Murray, UT 84107

Kimberly Ceruti
835 East 4800 South, Suite #210-B
Murray, UT 84107-5533